GENERAL ELECTRIC CO. v. BULLOCK ELECTRIC & MFG. CO.

(Circuit Court, D. New Jersey. August 12, 1907.)

1. PATENTS—INFRINGEMENT—ARMATURES.
    The Morrow patent, No. 504,401, for an armature for dynamo electric machines, claim 2, which covers an armature core comprising layers of segmental laminæ dovetailed to an internal supporting shell, the function of the dovetail connection being to lock the laminæ to the spider for driving purposes, and also to do so in such manner that they cannot be driven from the spider by centrifugal force, was not anticipated as to the latter feature, and discloses patentable novelty; also *held* infringed.

2. SAME—ANTICIPATION.
    The Reist patent, No. 559,910, for an armature for a dynamo electric machine, is void for anticipation as to all three of its claims. Claim 2, if possibly novel, *held* not infringed.

In Equity. On final hearing.

W. K. Richardson and A. D. Salinger, for complainant.
Thomas F. Sheridan and Clifton V. Edwards, for defendant.

LANNING, District Judge. The complainant is the owner of the Morrow patent, No. 504,401, and of the Reist patent, No. 559,910, each for an armature for dynamo electric machines. They are capable of conjoint use. Each patent was issued to the complainant as assignee of the inventor. The defendant is charged with their infringement, and the defense set up as to each patent is invalidity of the patent and noninfringement.

The Morrow patent was applied for May 13, 1893, and granted to the complainant, as Morrow's assignee, September 5, 1893. The figures accompanying the patent are as follows:

In the specification of the patent Morrow says:

"My invention relates to the construction of armatures; its object being to provide efficient and economical means for building up a laminated core and securing it to its support or carrier. In carrying out my invention I provide an internal cylindrical supporting shell, preferably carried by the usual armature spiders keyed to a shaft, and on the outer surface of said supporting shell longitudinal grooves are cut, into which corresponding projections on the inner surface of an annular armature core are adapted to fit, preferably making a dovetail or undercut joint. The core itself is composed of segmental laminæ of such proportions that a predetermined number of

them make one layer of the core; and in adjacent layers the segments are so arranged as to break joints. The said segments are provided at their inner edges with projections adapted to fit the grooves on the supporting shell, and registering with each other when the core is assembled. * * * Referring to Fig. 1, the cylindrical supporting shell, A, is carried on spiders, A¹, keyed to a shaft, A², in the ordinary manner. At regular intervals along the outer surface of said supporting shell, A, are longitudinal undercut grooves, a, into which fit the dovetail projections, b, on the laminæ, B. In making up an armature, the spiders and supporting shell are first assembled, and the laminæ of sheet iron punched out in the shape indicated in Fig. 1 are slipped over the surface of the said shell, with the projections, a, in the grooves, b. After one layer is in place, another, breaking joints with the first, is put on, and so on, until the armature is completed. The dotted lines in Fig. 1 indicate the edges of the laminæ in successive layers, showing the manner of breaking joints. It is obviously unnecessary to have the dovetail projections exactly fit the grooves, as shown in Fig. 1, and this is, moreover, manifestly undesirable, since much more care is thereby rendered necessary both in punching the laminæ and in finishing the grooves. Slight modifications are therefore shown in Figs. 2, 3, and 4. In Fig. 2 the outer corners of projection, b, are rounded as shown at b¹, while the outer edges of the groove, a, are rounded as shown at a¹. A firm connection is thus afforded between the parts by the fit of the beveled edges of the groove and projection, while the necessity of a perfect fit at the acute angles, which would be difficult of attainment, is obviated. In Fig. 3, instead of rounding the edges of the groove, a, the laminæ are punched so as to have a recess, b², at the inner acute angles of the dovetail projections. In all of these arrangements, however, the projection, b, extends to the bottom of the groove, a, necessitating a careful milling thereof, as well as a smooth edge on said projection, in order to render the parts readily assembled. It is therefore preferable to chamber the groove, as shown at b³ in Fig. 4. * * * I am aware of patent No. 493,337, granted to Horace F. Parshall March 14, 1893, and therefore do not claim broadly an annular core supported by and dovetailed to an internal cylindrical support, but confine myself to a core made up of segmental laminæ punched with internal dovetail projections. It is obviously of material advantage to make the laminæ segmental, rather than annular, since the material from which they are punched can in this way be cut much less to waste, while by so assembling consecutive layers as to break joints, as above set forth, a practically solid structure is obtained. A further improvement consists in the modifications in the shape of the dovetail connections, as described, which render the parts much more readily assembled. By making the core with internal dovetail projections integral therewith, a greater depth of free iron for the traverse of magnetism is obtained."

The patent has three claims, but the second claim only is alleged to be infringed. That claim is as follows:

"An armature core comprising layers of segmental laminæ dovetailed to an internal supporting shell, in which the segments in consecutive layers break joints, substantially as described."

Morrow was not the first to use segmental laminæ in building up armature cores. Nor was he the first to use connecting projections and grooves between the spider and the laminæ of an armature core. The British patent, No. 238, issued July 6, 1889, to Gibbs & Fesquet; the Geisenhoner patent, No. 414,900, dated November 12, 1889; the British patent, No. 19,011, issued October 18, 1890, to Hopkinson; the British patent, No. 4,858, issued February 7, 1891, to Kapp; the Lundell patent No. 461,795, dated October 20, 1891; and the Smith patent, No. 492,244, dated February 21, 1893—all describe segmental laminæ so assembled as to break joints. In all of these patents of the prior art, however, except possibly Hopkinson and Smith, the segmental laminæ are fastened to the frame of the armature by bolts running

transversely through the laminæ and parallel with the shaft of the spider or armature. In Hopkinson, the method of fastening the laminæ to the frame of the armature is not described, unless it be in the language of the specification, which declares that:

"The friction between the plates is sufficient to keep them in place just as well as if they were entire rings."

In Smith's patent the inner peripheries of the laminæ are welded together, thus obviating the necessity of bolts. In none of the above-mentioned patents are there any dovetail connections between the spider and the armature.

In British patent No. 4,302, issued to Crompton March 3, 1884, and in United States patent No. 387,343, issued to Crompton August 7, 1888, the laminæ are complete annuli, and are provided on their inner peripheries with dovetail grooves, into which are fitted the dovetail ends of the arms of the spider. The arms, however, at their inner ends, fit into the hub that surrounds the shaft in such fashion that the hub may be withdrawn, leaving the arms attached to and held in the laminæ by reason of their dovetail connections with the laminæ. In the specification of each of these Crompton patents it is said:

"This withdrawal of the central hub or hubs (as the case may be) greatly facilitates the winding of the armature coils onto the core. It also facilitates the insulation of the wires, and afterwards permits of easier access to the internal surface of the ring-core than has hitherto been the case, and thus lessens the cost of repairs or renewals of the coils."

And in the Parshall patent, No. 493,337, dated March 14, 1893, the laminæ are complete annuli. The inner periphery of each of the annuli contains a series of notches or grooves, which the patent declares are "preferably of a dovetail or undercut shape." The specification further says:

"The notches are similarly arranged in all the disks, so that when the disks are assembled the notches will register and form grooves running lengthwise of the core."

Longitudinal dovetail grooves are also cut in the outer surface of the spider. When the laminæ are assembled on the spider and properly arranged, the dovetail grooves in the spider and those in the laminæ are opposite to each other, and into them keys are fitted, though the specification says the keys "may be cast integral with the shell," or spider. The keys are made somewhat smaller than the grooves, and are fastened in the grooves by Babbitt metal or similar material poured therein. The patentee says:

"It is preferable to dovetail the grooves and keys, though any suitable shape may be given to them."

This reference to the prior art is sufficient to present for intelligent consideration the question as to whether the Morrow patent contains any patentable novelty. It is conceded by the complainant that there was nothing novel in Morrow's use of segmental laminæ. It is also contended by the defendant that there was nothing novel in Morrow's use of the dovetail connections between the spider and the laminæ. But it will be observed that the functions of the dovetail grooves of the two Crompton patents are, first, to receive the ends of the spider arms for a driving purpose, and, second, to hold the arms in place when

the hub is removed. In the Parshall patent the function of the dovetail grooves is only to receive the keys, by which the laminæ are locked to the spider, for a driving purpose. But when we turn to the Morrow patent we find that the functions of the dovetail connections between the spider and the laminæ are, first, to lock the laminæ to the spider for a driving purpose, and, second, to do so in such manner that they cannot possibly be driven from the spider by centrifugal force. In no patent of the prior art did the dovetail connection ever perform a function like the second one of the Morrow patent. I think, therefore, the Morrow patent was not anticipated by any of the patents of the prior art.

But it appears in the proofs that the complainant shipped certain dynamo electric machines to Mexico on April 27, 1893, and also certain other dynamo electric machines to Providence, R. I., not later than May 1, 1893. This proof was stipulated into the case by the parties. Drawings of these machines, made as early as July, 1892, are in evidence, and the defendant's counsel contend that they show anticipation of the complainant's patent, the application for which was not filed until May 13, 1893. A comparison of the drawings of these machines with the drawings of the Morrow patent does disclose what appear to be striking similarities. But there is no testimony to explain the drawings thus stipulated into the case, and I feel sure I would be wholly unwarranted in concluding, in the absence of such testimony, that the drawings, which are quite intricate, show anticipation. The burden of proof as to anticipation is on the defendant, and must be established by preponderating and satisfying evidence. It has not been so established.

As to infringement of the Morrow patent: The functions of the dovetail connections in the Morrow construction and in the defendant's device, are, first, to furnish such connections between the laminæ and the spider that the laminæ will be forced to rotate with the spider, that is, to furnish a driving power, and, second, to hold the laminæ to the spider against the centrifugal force exerted by rapid rotation. The defendant insists that there are these differences between the two constructions: That in the defendant's construction there is no complete cylinder cast integrally with the arms of the spider, as in the Morrow construction, and that the dovetail connections are between the ends of the spider arms and the laminæ, and not, as in the Morrow construction, between the outer surface of a cylinder and the laminæ; and that in the defendant's construction the dovetail projections are on the ends of the spider arms and the dovetail grooves in the laminæ, while in the Morrow construction the dovetail projections are on the laminæ and the dovetail grooves in the surface of the cylinder. But, in my opinion, there is no material difference between the complete cylinder of the Morrow construction and the spider arms of the defendant's construction, the outer ends of which spread out laterally far enough to carry on the end of each arm several dovetail projections, though not far enough to form a complete cylinder. Nor do I think there is any material difference between the two constructions, in that in the Morrow construction the projections are on the laminæ, while in the defendant's construction the grooves are on the laminæ. In fact, the defendant's laminæ have alternate dovetail projections and grooves, just

as the Morrow construction has. The projections on the laminæ of the Morrow construction are narrower, and on the laminæ of the defendant's construction wider, than the grooves. The functions of the dovetail connections in the two constructions, however, as already observed, are precisely the same. The defendant must therefore be held to have infringed the second claim of the Morrow patent.

The figures of the Reist patent are as follows:

In his specification Reist says:

"My invention relates to dynamo electric armatures, and has for its ob-
ject to provide a construction by which such armatures may be thoroughly
ventilated, and also to so arrange the construction of the supporting structure
or 'spider,' as it is commonly called, that it may be cast or otherwise formed
in a single piece without strains and without distortion. My invention fur-
ther consists in the details of the construction by which I accomplish the
purposes herein pointed out. In armature spiders, as commonly constructed
heretofore, a number of radiating arms have been combined with a central
body or hub and a rim connecting the arms. Where such structures have
been cast in a single piece of large diameter, the rim and the portions adja-
cent thereto would cool first and take a permanent set, the arms would then
cool, and later the hub, which is the largest mass of metal, would cool. The
result of this has been that strains were set up in the parts of the structure,
mainly in the rim and in the arms, so that in some cases it would be distorted;
and it has even been known to split, either in cooling or in the process of
manufacture, when the outer skin would be turned off. This could be reme-
died by annealing, but this is an expensive and tedious process. I have
therefore devised the construction herein set out. The arms, being uncon-
nected at the outer ends, except by the laminæ of the armature, as pointed
out herein, are free to move under strain set up in casting, and the position
of the connecting means between the laminæ and the arms might be ad-
justed in the course of manufacture to conform to any trifling inequalities."

In describing the figures of the patent he says:

"D is one of the arms of the spider. * * * The arm, D, is expanded at
its outer end into a head or face, E. The face of this head is cut away at
E¹, and two enlargements, E², E², are shown, in each of which is a dovetail
groove or mortise, F, serving to hold the laminæ of the armature in place.
* * * These laminæ are of the usual form except that they are provided
with projecting tongues, G¹, G¹, of dovetail shape in the case illustrated, by
means of which the arms of the spider are connected. The laminæ are also
provided with the usual slots, I, for the coils of the armature. A sectional
casting, H, is also used, and may be either made in several sections, or may
be a split ring, according to the size of the armature. Bolts, K, K, passing
through the rings, hold the laminæ together. As best shown in Fig. 3, ven-
tilating spaces, G², are left between the several groups of the laminæ; this
being a well-known construction."

Figure 4 is referred to as showing "one of the laminæ," with its pro-
jecting tongues, $G^1$. Figure 2 is also referred to for the purpose of
showing, by the dotted and full lines, the manner in which the laminæ
break joints. The construction thus described, says the inventor, "is
exceedingly efficient, in that any inequalities occurring from heating in
the armature are taken up without causing undue strain, and the parts
are free to move within reasonable limits, as will be readily apparent."
The claims are three in number, each of which, the complainant char-
ges, is infringed by the defendant's device. They are as follows:

"1. In combination, an armature-spider having a central boss or hub, sep-
arate arms radiating therefrom, the arms being provided upon their outer ends
with dovetail grooves, and laminæ having dovetail projections fitting in the
grooves, thus connecting the arms.
"2. In combination, an armature-spider having a central boss or hub and
separate radiating arms, the arms having dovetail grooves upon their outer
ends, laminæ arranged in groups and having dovetail projections fitting in the
grooves, and clamping-rings for holding the laminæ in position.
"3. As a new article of manufacture, an armature-spider for a dynamo-
electric machine, comprising a central boss or hub, separate arms radiating
therefrom, the arms having expanded faces, and dovetail grooves in the ex-
panded faces."

The defendant insists that all of these claims were anticipated in the prior art. The file wrapper shows that the application for the patent contained six claims. Of these, claims 1 and 4 were as follows:

"1. In combination, an armature-spider having a central boss or hub, and arms radiating therefrom, with laminæ connecting the ends of the arms together."

"4. As a new article of manufacture, an armature-spider for a dynamo-electric machine, consisting of a central boss or hub, separate arms radiating therefrom, and means for attaching the armature laminæ directly to the outer ends of the arms."

These two claims were rejected, because they contained nothing patentable over Fitch, No. 293,441, Orton, No. 309,735, Keith, No. 353,-310, Thomson, No. 400,973, and Collins, No. 451,894.

Claim 6 was as follows:

"6. As a new article of manufacture, a sheet metal lamina for the armature of a dynamo electric machine, comprising a body portion conforming to the curves in the armature, and projecting dovetail lugs or tongues for securing the lamina in place."

This claim was rejected upon the Morrow patent, now in suit.

After the rejection of claims 1, 4, and 6 of the application, a substitute for claim 4 was filed, differing from that claim only in making the clause "separate arms radiating therefrom" read "separate arms radiating therefrom having expanded faces." The substituted claim was also rejected, upon Lundell's two patents, No. 461,795, and No. 487,755. Reist submitted to the action of the Patent Office and authorized all of the rejected claims to be canceled. Claims 2, 3, and 5 of the application were the only ones allowed, and they became claims 1, 2, and 3 of the patent, which the defendant now insists are also anticipated.

A comparison of the original claims, 1, 4, and 6 with the patents upon which those claims were rejected makes it clear, I think, that their rejection by the Patent Office was based on the conclusion that they were too broad. This conclusion, I also think, was correct. The patents upon which the rejection was made disclosed combinations which exactly fitted the broad and general descriptions of the rejected claims. That the patentee was himself convinced of this is shown by the fact that he authorized the cancellation of the claims. Bearing in mind the rule of the patent law that a claim allowed by the Patent Office cannot be so construed as to be the equivalent of a canceled claim, as well as the rule that a claim anticipated by an older invention is void, we find that, if the combination described in claim 1 of the patent possesses any novel feature whatever, it is only in the fact that the arms have at their outer ends "dovetail grooves," and the laminæ "dovetail projections fitting in the grooves." But I have held, in an opinion just filed in Westinghouse Electric & Manufacturing Company v. Prudential Insurance Company of America, 155 Fed. 749, that there is no material difference between an armature spider which has a central hub with arms radiating therefrom connected at their outer ends by a rim or cylinder and an armature-spider which has a central hub with arms radiating therefrom not connected at their ends by a rim or cylinder. The Morrow patent, one of the two patents now in suit, discloses an armature-spider which has (1) a central hub; (2) arms radiating therefrom connected

at their outer ends by a rim or cylinder; (3) dovetail grooves in the outer surface of the cylinder; and (4) laminæ having dovetail projections fitting in the grooves. The Reist patent discloses an armature-spider which has (1) a central hub; (2) arms radiating therefrom having at their outer ends expanded faces, but not sufficiently expanded to form a complete rim or cylinder; (3) dovetail grooves in the outer surfaces of the expanded faces; and (4) laminæ having dovetail projections fitting in the grooves. I can find no substantial difference between the combination disclosed by, though it is not claimed in, the Morrow patent, and the combination described in claim 1 of the Reist patent. Claim 1 of Reist is anticipated by Morrow.

What has been said of claim 1 disposes also of claim 3. It differs from the spider disclosed by the Morrow patent only in the fact that the outer ends of the arms are not sufficiently expanded to form a complete rim or cylinder.

Claim 2 requires further consideration. It is for a combination, the elements of which are (1) a central hub; (2) separate radiating arms; (3) dovetail grooves on the outer ends of the arms; (4) laminæ arranged in groups; (5) dovetail projections on the laminæ fitting in the grooves; and (6) clamping rings for holding the laminæ in position. By arranging the laminæ in groups, provision is made for the ventilating spaces, G², referred to in the specification. The separate radiating arms (that is, arms the outer ends of which are not connected by a continuous rim or cylinder) and the ventilating spaces between the groups of laminæ secure one of the objects of the combination stated in the specification, which is "a construction by which such armatures may be thoroughly ventilated." If we consider the third and fifth elements of the combination—dovetail grooves on the outer ends of the arms and dovetail projections on the laminæ fitting in the grooves—as the equivalent of dovetail grooves on the laminæ with dovetail projections on the outer ends of the arms, as I think we should do, the six elements of the combination are all old. I am convinced that the combination is a very useful one; but, after careful consideration, I have reached the conclusion that it does not set forth any patentable novelty. Its language is so general that it can be read upon either of the prior Crompton patents. Each of these patents describes an armature-spider which has (1) a central hub; (2) separate radiating arms; (3) dovetail grooves in the laminæ (which are the equivalent of dovetail grooves in the outer ends of the arms of the claim now under consideration); (4) laminæ arranged in groups; (5) dovetail projections on the outer ends of the arms fitting in the grooves in the laminæ (which are the equivalent of dovetail projections on the laminæ of the claim under consideration); and (6) clamping rings (or "washers," as they are called by Crompton) to hold the laminæ in position. I have therefore been obliged to conclude that claim 2 of Reist is anticipated by Crompton.

If I am in error in holding claim 2 of the Reist patent to be invalid, still the complainant has failed, I think, to show infringement of that claim. It is a combination claim. An infringing device must embody all the elements of the claim. I find nothing in the record explaining

how the defendant's laminæ are held in position. If the defendant uses a clamping ring, the complainant has not shown that fact.

The final conclusion reached is that the complainant is entitled to a decree adjudging the defendant an infringer of claim 2 of the Morrow patent, but not of the Reist patent.